CHARLES SEYMOUR *vs.* JOSEPH D. PRESCOTT.

Franklin. Opinion February 22, 1879.

*Duress. Consideration.*
</div>

In an action upon a promissory note by the payee against the maker, the defense alleged threats to have been made by the plaintiff to induce the defendant, as he was about to take the train from Knoxville, Tenn.,—in infirm health—for his home in Maine, to sign the note for the amount of the plaintiff's claim against the defendant's son; such threats being to the effect that defendant would not be allowed to leave Knoxville till he signed the note, but there being no menace of violence, and no pretense that process authorizing an arrest had been procured, nor that an officer was in attendance to make such arrest; *Held,* that this does not fall within the legal definition of duress, and affords no legal defense to the note.

The note not having been procured by duress, the discharge of the plaintiff's claim against the defendant's son was a sufficient consideration.

ON REPORT.

ASSUMPSIT on a promissory note of the following tenor:

" Knoxville, Tennessee, June 11, 1870. One year after date I promise to pay to the order of Charles Seymour, with interest at the rate of ten per cent, one hundred and ninety-six and 15–100 dollars at said Seymour's office in Knoxville, Tenn., value received. (Signed) J. D. Prescott."

Answer, duress and want of consideration. The material facts appear in the opinion.

*S. Belcher*, for the plaintiff.

*J. B. Severy*, for the defendant, in a written brief of thirty-seven pages, cited, among others, the following authorities :

I. Duress. 1 Par. Con. (5 ed.) 392, 393. Met. Con. 23, and ref. 2 Greenl. Ev. 302. *Robinson* v. *Gould*, 11 Cush. 57. *Foshay* v. *Ferguson*, 5 Hill, 154. *Bush* v. *Brown*, 19 Am. R. 695–8, and ref. 49 Ind. 573. *Alexander* v. *Pierce*, 10 N. H. 494. *Worcester* v. *Eaton*, 13 Mass. 371. *Taylor* v. *Jaques*, 106 Mass. 291. *Whitefield* v. *Longfellow*, 13 Maine, 146.

II. Want of consideration. Met. Con. 171, 172. *Packard* v. *Richardson*, 17 Mass. 129. *Bixler* v. *Ream*, 3 Penn. 282. *Bingham* v. *Kimball*, 17 Ind. 396.

SYMONDS, J. This case was tried at *nisi prius*, by consent of parties, before the presiding justice, who, after hearing the evidence, ruled, as matter of law, that it did not sustain the claim of the defendant in respect either of want of consideration for the note in suit, or of its procurement by duress ; and, as these were the only grounds of defense, ordered judgment for the plaintiff for the amount of the note. The evidence is now before the court upon exceptions taken by the defendant to this ruling thereon.

There is an essential inconsistency between the testimony for the plaintiff and that for the defendant in regard to the transactions which led to the giving of the note and the circumstances attending it. The contradictions cannot be reconciled. The statements cannot both be true.

In reference to the testimony for the plaintiff, it is sufficient to say that, if it is to be believed, there can be no pretense either that a legal and adequate consideration for the note was wanting, or that the defendant's signature was obtained while he was under the influence of any fear or restraint. It was, on the contrary, if this evidence is credible, a note given for money loaned to defendant, at his request and for his accommodation ; made at the time and for the amount of the loan.

The only question, then, to be determined is whether the testimony offered by the defendant sustains either of the grounds on which the defense proceeds.

The defendant is a resident of Maine, who at the date of the note was in Knoxville, Tennessee, where he had gone as agent for his son for the purpose of effecting the sale of certain real estate, which had previously been in charge of the plaintiff, a real estate agent in Knoxville. On June 4, the defendant says, he finished his business, paid the plaintiff $100 for his commissions and services in completing the sale and writing the deeds, and then regarded his dealings with the plaintiff as at an end. The defendant was at that time seventy-one years of age, and, according to this account, in a state of health so poor that he did not dare to return to Maine alone, and therefore remained in Knoxville about a week for the purpose of making the journey in the company of some friends, Mr. Holt and his family, who were going as far as New York. Just as the defendant was about to take the train with these friends he says the note was signed, and under circumstances which may be stated in his own language. " I knew about what time the cars started, . . and as the time was expiring and I thought I ought to be there, Mr. Seymour came into the house with an inkstand and a pen and some papers in his hands and requested me to execute the note on my son's account. I said to Mr. Seymour, 'The cars are about to leave, Mr. Holt has already gone up. I can't stop a minute to see to this matter.' Said he, ' You can't leave the place until you sign this note,' holding it up to me. Well, I felt for a moment as if my life depended on going home at that time with Mr. Holt. So great was my terror that I seized the pen and signed the note, and immediately made my way to the depot. He held the note and this paper in his hand."

The paper which the plaintiff is said to have held in his hand at that time with the note was a bill against the defendant's son, containing items of commissions and cash expended, on which the balance due was the same as the face of the note in suit. This bill, receipted by the plaintiff, was taken by the defendant after signing the note, and on his return home was delivered to his son, by whom it has since been retained.

This is substantially the defendant's account of the manner in which the note was given, the details of which are stated more fully in the report of the case.

Giving, then, to all the testimony introduced by the defendant upon this point the weight of truth, does it prove the duress alleged ?

The plaintiff claimed that a balance of account equal in amount to the face of the note was due to him from the defendant's son for services and disbursements. It was not, so far as the case shows, a fraudulent or fictitious claim. There is nothing to impeach the good faith of the plaintiff in asserting that amount to be due him from the defendant's son, nor to indicate that he was knowingly preferring a claim when he had none, or intentionally demanding more than was due. From the subsequent conduct and correspondence of the parties a strong inference may be drawn that the plaintiff's claim against the son was not without foundation; but, in considering the ruling of the court, it is enough to say that, admitting all that the testimony for the defendant tends to show, still nothing appears to indicate that the plaintiff's statement of the account between himself and the defendant's son was not an honest one, correct from the plaintiff's point of view, and showing the balance which he in good faith believed to be due.

Under these circumstances, the plaintiff, it is said, called upon the defendant as he was about to take the train, presented the bill, and stated that the defendant could not leave town until the note was signed.

Giving full effect to all that the evidence shows in regard to the age and infirmity of the defendant, and his anxiety to reach home, we see nothing in the threats used, or in the situation, to excite in his mind a reasonable belief that he was under the necessity to give his own note for his son's debt, or a reasonable apprehension of serious consequences to himself if he did not sign ; nor did he attempt to avail himself of the resources at his command to avoid compliance.

What had the defendant to fear ? It was not physical force or resistance, for none was offered ; and, if offered, no reason appears

why an outcry would not have summoned aid and prevented violence. But there is no evidence whatever that the defendant was resisted in any attempt to leave without signing the note. He made no such attempt.

Was it the use of legal process, and defendant's arrest and detention thereby ?

It is difficult to believe this when we remember that the bill itself was on its face a bill against the defendant's son, not against himself. Nor did the defendant wait till even an apparent necessity to sign the note arose. He made no effort to proceed on his way. He did not attempt to detain his friends to accompany him on a later train if he was obliged to stay. Besides these friends in Knoxville, according to his own statement he had with him an amount of money, part of the proceeds of the real estate sold, amply sufficient to procure even strangers for bail. Under these circumstances, the act of the defendant in signing the note, according to his own account of it, was rather a yielding to the importunity, than submission under the threats and violence, of the plaintiff. The case presented, upon the defendant's testimony, is not that of one who executes a contract because at the time he believes he is compelled to do it, but rather that of one who, knowing that he is under no compulsion, for the sake of accomplishing some purpose he has in mind, voluntarily yields to the demand which is made on him without right, and thereby assumes the liability.

The recent opinion of the court in *Harmon* v. *Harmon*, 61 Maine, 227, renders the citation of authorities upon this point unnecessary. It may safely be stated, as the result of them, that words like those alleged to have been used by the plaintiff, unaccompanied even by a menace of violence, and without a pretense that process authorizing an arrest had been procured, or that an officer was in attendance to make such arrest, do not fall within the legal definition of duress. To act upon them is not to yield to a reasonable fear of immediate danger, but is, on the contrary, to give the consent which completes the contract.

To avoid the danger of losing a particular train, a danger which certainly might be regarded as remote rather than immediate,

until an attempt was made to escape it in some other way, the defendant, as he says, gave his own note in payment of ·a debt claimed to be due from his son. The note not having been obtained by duress, it follows that the discharge of the plaintiff's claim against the son was a sufficient consideration.

An examination of all the evidence shows that the law, which does not allow the defendant to avoid his note given under these circumstances, works no injustice in this instance.

*Exceptions overruled.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and LIBBEY, JJ., concurred.